**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.: 3:20-cv-00627-RGJ**

**ELECTRONICALLY FILED**

| | |
|---|---|
| **DUSTIN HOWARD RUSSELL** | **PLAINTIFF** |
| **v.** | |
| **JAMES UNDERWOOD;** | |
| **MELISSA JOHNSON** | **DEFENDANTS** |

**DEFENDANT, MELISSA JOHNSON'S, MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Comes the Defendant, Melissa Johnson, by counsel, and in support of her Motion for Summary Judgment, submits the following Memorandum of Law:

**BACKGROUND**

P*ro se* Plaintiff Dustin Howard Russell filed his Complaint on September 3, 2020 (DN 1) alleging violations of the Eighth Amendment of the United States Constitution while he was an inmate at the Larue County Detention Center (LCDC). On February 11, 2021, this Honorable Court entered a scheduling order (DN 8) setting a pretrial discovery deadline of June 8, 2021, and a dispositive motion deadline of August 7, 2021.

This case is ripe for summary judgment as there are no genuine issues of material fact. While Plaintiff, Mr. Russell, claims that this Defendant violated his constitutional rights, he has failed to provide sufficient evidence of deliberate indifference to his alleged serious medical needs.

## SUMMARY OF RELEVANT FACTS

Plaintiff, Dustin Russell, was booked into the Larue County Detention Center on February 13, 2020.  An initial standard medical triage performed by jail personnel on entry indicates "no medical problems" and "no mental health or medical issues that may require attention while here."[1]  Mr. Russell acknowledged he was aware that he could receive medical care if needed while at the facility. He reported being on "no prescription medications" that needed to be continued while at the facility.[2]

On February 23, 2020, Defendant Melissa Johnson, MTA/LPN, an employee of Southern Health Partners (SHP), completed a routine Admission History and Physical form.[3] Mr. Russell's mental health history included a suicide attempt and hospitalization in 2000. His initial vital signs taken during the exam by Nurse Johnson showed height 6'5", weight 203.5, pulse 72, blood pressure 142/102, temp 98.1, and oxygen saturations 98%. Mr. Russell's blood pressure was lower at 136/88 when rechecked during the exam.  The exam was within normal limits without any problems identified.  Nurse Johnson noted Mr. Russell's history of a suicidal attempt, nervous disorder (anxiety), and heartburn. He was cooperative, calm, and his content of thought was appropriately structured. Mr. Russell confirmed once again that he was not on any current medications. He reported that his current medical conditions/diagnoses included anxiety, depression, and migraines. Mr. Russell signed a consent for treatment form[4], and an authorization for release of medical information[5] which was sent to Little Sandy Correctional Complex for a medication history.

---

[1] See Standard Medical Questions and Standard Triage Questions dated 2/13/20, attached as Exhibit 1.
[2] Id.
[3] See Admission Data/History and Physical dated 2/23/21, attached as Exhibit 2.
[4] See Patient's Consent for Treatment dated 2/23/20, attached as Exhibit 3.
[5] See Authorization for Release of Medical Information to Correctional Facility dated 2/23/20, attached as Exhibit 4.

On February 27, 2020, Mr. Russell completed a sick call medical request that is partially cut off in the document. The message on the request was:

> "needing medication I have recently signed medical release records from little sandy correctional complex I appreciate everything medical staff is doing to get my records if not received by the institution could I please see…"[6]

The medication referenced in this request, the reason for the medication, and the provider who last prescribed it are not identified.

On March 3, 2020, the Larue County Detention Center was notified by the Department of Corrections, Little Sandy Correctional Complex, that the request for medical records must be submitted to Roederer Correctional Complex because Mr. Russell had been released from Little Sandy "for more than 90 days."[7]  On March 5, 2020, The SHP staff received a fax from Roederer Correctional Complex which included a four page medication list from 2008 – 2016.  However, none of the medications on the list were current as of March 5, 2020, and it appears they were last prescribed four years earlier.[8]  There is nothing to suggest that Mr. Russell had a valid prescription for any mental health medications, or that he had been treated for his mental health over the past four years  Additionally, Mr. Russell did not submit a sick call requesting to see a doctor, be evaluated for his mental health, or to receive mental health medication after the February 27, 2020 sick call slip.

Defendant, Melissa Johnson, provided Mr. Russell with medical care throughout his incarceration at LCDC, including reviewing his answers to intake medical questions, performing a thorough history and physical, and obtaining Mr. Russell's mediation history from Roederer

---

[6] See Sick Call Slip—Medical Request dated 2/27/20, attached as Exhibit 5.
[7] See letter dated 3/3/20, attached as Exhibit 6.
[8] See Medication Management pages dated 10/2/08 to 3/23/16, attached as Exhibit 7.

Correctional Complex. There was never a time that Mr. Russell was denied care or denied medication from an active prescription.

## ARGUMENT

### I. Plaintiff Has Not Provided Evidence Sufficient to Establish "Deliberate Indifference" or Cruel and Unusual Punishment.

Plaintiff, Mr. Russell, claims that his constitutional rights were violated due to the Defendant's alleged deliberate indifference to his health and well-being. Plaintiff, however, has not provided sufficient evidence to support this claim. Therefore, this Defendant is entitled to summary judgment.

Prison officials are liable under the Eighth Amendment for failing to protect an inmate only if they act with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed. 211 811 (1994). Officials act with deliberate indifference if they know of a substantial risk to an inmate's safety, yet disregard that risk by failing to take reasonable measures to abate it. *Id.* at 837. To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, an inmate must show that prison officials were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). Complaints of malpractice or allegations of negligence are insufficient to entitle a plaintiff to relief. *Estelle*, 429 U.S. at 105-06.

The U.S. Supreme Court has held:

> In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a

>constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 at 105-06, 97 S.Ct. 285 at 292 (1976).

In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court explained the deliberate indifference standard in the context of an Eighth Amendment claim. The term describes a state of mind more blameworthy than negligence and requires more than an ordinary lack of due care. *Id.* at 835, 114 S.Ct. 1970. In *Farmer*, the court adopted a subjective standard for determining whether an official acted or failed to act with deliberate indifference: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837, 14 S.Ct. 1970. This standard requires conscious disregard for a substantial risk of serious harm. *Id.* at 839, 114 S.Ct. 1970; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). Accordingly, even where an official fails to act in the face of an obvious risk of which he should have known but did not, the official has not inflicted punishment in violation of the Eighth Amendment. See *Farmer*, 511 U.S. at 837-38, 114 S.Ct. 1970.

The Sixth Circuit Court of Appeals held in *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) that:

>[the] test to determine whether the [prison] officials acted with 'deliberate indifference' has an objective and subjective component. The objective component requires an inmate to show that the alleged deprivation is 'sufficiently serious.' As the Supreme Court explained in *Farmer*, 'The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.' To satisfy the subjective component, an inmate must show that prison officials had 'a sufficiently culpable state of mind.' *Napier*, 238 F.3d at 742 (internal citations omitted).

The court continued, holding that an "inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* citing *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994).

The U.S. Supreme Court and the Sixth Circuit Court of Appeals have rejected contentions of deliberate indifference even in the most egregious situations. For example, in *Estelle v. Gamble*, 429 U.S. 97 at 105-06, 97 S.Ct. 285 at 292 (1976), Mr. Gamble was placed in solitary confinement for prolonged periods of time as punishment for refusing to do work which he was physically unable to perform. Mr. Gamble suffered from a back sprain and high blood pressure, yet prison guards refused to let him sleep on a lower bunk as the doctor had prescribed. *Id.* On at least one occasion, Mr. Gamble had a prescription that was not filled for four days because it was lost by staff personnel. *Id.* When Mr. Gamble suffered from chest pains and blackouts while in solitary confinement, he was forced to wait twelve hours to see a doctor while clearance was obtained from the warden. *Id.* Mr. Gamble had made seventeen attempts to obtain diagnosis and treatment for his condition. *Id.* Nevertheless, the court found that this conduct did not amount to deliberate indifference. *Id.*

Similarly, in *Napier v. Madison County, Ky.*, 238 F.3d 739 (6th Cir. 2001), the Sixth Circuit Court of Appeals rejected the plaintiff's claims of deliberate indifference in a case in which the plaintiff, who suffered from complete kidney failure, was kept from scheduled dialysis treatment while incarcerated. The court denied the plaintiff's claim due to his inability to produce evidence of any detrimental effects resulting from the lack of treatment. *Id.* at 743.

In *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994), the plaintiffs alleged that the physician at the correctional facility had repeatedly failed to conduct proper physical examinations and to

prescribe necessary pain medications; they also allege that the doctor regularly cancelled prescriptions made by other doctors without consulting the prescribing doctors or examining the inmates. Other defendants in *Brooks* allegedly failed to properly supervise the doctor and to remedy the problems once they were brought to the defendants' attention. *Id.* at 126. Nevertheless, the court held that even repeated acts of negligence do not constitute deliberate indifference, absent a showing of subjective awareness of a substantial risk of serious harm. *Id.* at 129.

In *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986), during a riot, an unarmed prisoner was shot in the leg by prison officials without a verbal warning. The court held that this did not violate the inmate's Eighth Amendment rights. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Id.* at 319. "After incarceration, only the 'unnecessary and wanton infliction of pain'…constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* at 319, citing *Ingraham v. Wright*, 430 U.S. 651, 97, S.Ct. 1401 (1977), quoting *Estelle v. Gamble*, supra at 105-106, 97 S.Ct. at 291-292. *See also Russell v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991).

In the present case, this Defendant did not act with knowledge or deliberate ignorance of a substantial risk to Mr. Russell's health. Plaintiff has not and cannot produce any evidence which would indicate that she "consciously disregarded" a substantial risk of harm to Mr. Russell. Mr. Russell was evaluated upon presentation to the facility, and was seen by medical personnel who performed a thorough history and physical. To the extent Plaintiff claims he was denied medical treatment, there is ample evidence that Plaintiff was provided medical treatment; he simply did not have a valid prescription for the medications he requested.

Again, in order to establish deliberate indifference, Mr. Russell must provide evidence that this Defendant had knowledge of a substantial risk to his health, that she inferred that there was in fact a substantial risk, and that she disregarded it. Plaintiff has no such evidence here. Thus, Mr. Russell cannot provide any evidence that this Defendant was deliberately indifferent to a substantial risk to his health.

Although the Sixth Circuit has further held that "deliberate indifference may be established by showing of grossly inadequate care as well as [by] a decision to take an easier but less efficacious course of treatment," where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). Thus, even if Plaintiff argues over the adequacy of the treatment received, this court should follow precedent and be reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.

For the reasons stated above, this Defendant was not deliberately indifferent to Mr. Russell's needs, nor did she subject him to cruel and unusual punishment, and thus this Defendant is entitled to summary judgment.

**II.   In the Alternative, these Defendants are Entitled to Qualified Official Immunity.**

At all times complained of, this Defendant was acting in her official capacity in the course and scope of her employment at the Larue County Detention Center, exercising discretion and judgment in providing healthcare to Mr. Russell. Therefore, this Defendant is protected from liability by qualified official immunity.

The Kentucky Supreme Court held in *Yanero v. Davis* that "when an officer or employee of a government agency is sued in his/her representative capacity, the officer's or employee's actions are afforded at the same immunity, if any, to which the agency, itself, would be entitled." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). The court also held that when public officers and employees are sued in their individual capacities they enjoy "qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Id.* Qualified official immunity only extends to "(1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) [taken] in good faith; and (3) within the scope of the employee's authority." *Id.* An officer or employee is not immune from liability "for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* at 522.

The Defendant's actions in this case were "discretionary" as the Kentucky Court of Appeals held in *Jerauld v. Kroger*, 2010-CA-001429-MR, 2011 WL 3363074 (Ky. Ct. App. Aug. 5, 2011). In *Jerauld*, the plaintiff claimed that the Kenton County Detention Center medical staff member, deputy jailer, and psychologist were liable for negligence and intentional infliction of emotional distress relating to the detainee's suicide attempt and resultant brain injury. *Id.* at *3. The court explained that "the supervision of prisoners is a discretionary act and entitles those in that position to qualified immunity," and held that the deputy jailer and medical staff member took actions that were "discretionary in nature" when they decided to remove the inmate from medical watch because he "appeared to be doing well" and "denied having any desire to hurt himself." *Id.*

The court further held that psychologist Kroger, who was "not a full-time employee of the [detention center] but was hired on a contractual basis to perform duties as a psychologist," was also entitled to the "defense of qualified official immunity." *Id.* at *4. The Court of Appeals noted the trial court's finding that "no task is more inherently discretionary than evaluating actions and behaviors of prisoners and deciding whether they are sufficiently alarming to warrant additional review by psychologists or other officials. Such decisions inherently require conscious evaluation of alternatives, personal reflection and significant judgment." *Id.* Finally, the court held that the psychologist "interviewed Jerauld one on one … evaluat[ing] him using his own discretion along with tests and forms which he interpreted. After this evaluation, he determined that he was not a suicide risk. Clearly, his actions were of a discretionary nature … and entitled him to qualified official immunity." *Id.* at *5.

Similarly, in this case, this Defendant used her discretion in evaluating Mr. Russell. Utilizing an "evaluation of alternatives, personal reflection and significant judgment," she determined the needs of Mr. Russell and acted upon those discretionary determinations. Furthermore, this Defendant used her discretion in evaluating Mr. Russell's condition pursuant to the information available to her, evaluating him, treating him, and observing him on a regular basis throughout his incarceration. Just as the court found in *Jerauld*, her actions in this case are immune from liability because detention center contract healthcare providers are granted qualified official immunity.

## CONCLUSION

For the reasons stated herein, Defendant, Melissa Johnson, requests that her Motion for Summary Judgment be granted, and that the court enter an order dismissing Plaintiff's claims against her with prejudice.

Respectfully submitted,

/s/ Robert J. Shilts
Robert J. Shilts – KY 91267
James E. Smith – KY 90979
Gazak Brown, P.S.C.
3220 Office Pointe Place
Suite 200
Louisville, Kentucky 40220
(502) 412-5020 Tel.
(502) 412-1004 Fax
rshilts@gazakbrown.com
jsmith@gazakbrown.com
Service Email:
pleadings@gazakbrown.com
sjacobsvaldes@gazakbrown.com
*Counsel for Defendant, Melissa Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via U.S. Mail, postage pre-paid, and/or via electronic service this 20th day of July, 2021 to the following:

**Legal Mail: Inmate # 191746**
Dustin Howard Russell
Southeast State Correctional Complex
P.O. Box 1600
Wheelwright, Kentucky 41669
*Pro Se Plaintiff*

R. Keith Bond
Coleman Lochmiller & Bond
P.O. Box 1177
Elizabethtown, Kentucky 42702
270-737-0600 Tel.
*Counsel for Defendant, Jamie Underwood*

/s/ Robert J. Shilts
Robert J. Shilts
James E. Smith
*Counsel for Defendant,*
*Melissa Johnson*